# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| JOHN WINGO,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>3M COMPANY,<br><br>　　　　　　Defendant. | No. 22-CV-993 (WMW/JFD)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL**<br><br>**UPDATED SCHEDULING ORDER** |
| ROBERT RIEGER,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>3M COMPANY,<br><br>　　　　　　Defendant. | No. 22-CV-994 (WMW/JFD) |
| TITUS KARGBO,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>3M COMPANY,<br><br>　　　　　　Defendant. | No. 22-CV-996 (WMW/JFD) |

| | |
|---|---|
| DESIREE HOLLER,<br><br>     Plaintiff,<br><br>  v.<br><br>3M COMPANY,<br><br>     Defendant. | No. 22-CV-998 (WMW/JFD) |
| VAUGHN WINGO,<br><br>     Plaintiff,<br><br>  v.<br><br>3M COMPANY,<br><br>     Defendant. | No. 22-CV-1890 (WMW/JFD) |
| NEVELY RANDLE,<br><br>     Plaintiff,<br><br>  v.<br><br>3M COMPANY,<br><br>     Defendant. | No. 22-CV-1904 (WMW/JFD) |

This matter is before the Court on Defendant 3M's Motions to Compel[1] and to Amend the Third Amended Pretrial Scheduling Order,[2] in six related cases. The Court held

---

[1] (Def.'s Am. Mot. to Compel Discovery, Dkt. No. 67 in 22-CV-993 (WMW/JFD); Dkt. No. 58 in 22-CV-994 (WMW/JFD); Dkt. No. 44 in 22-CV-996 (WMW/JFD); Dkt. No. 66 in 22-CV-998 (WMW/JFD); Dkt. No. 32 in 22-CV-1890 (WMW/JFD) and Dkt. No. 36 in 22-CV-1904 (WMW/JFD).)

[2] (Def.'s Unopposed Mot. to Am. 3d Pretrial Scheduling Order, Dkt. No. 108 in 22-CV-

a hearing on the Motions on November 14, 2023. (Hr'g Mins., Dkt. No. 113.) No party or attorney appeared for any of the Plaintiffs. (*Id.*) Courtney M. Blanchard and Joseph G. Schmitt, Esqs., appeared for 3M. (*Id.*) The Court granted the motion to compel, with an exception, described below, which the Court stated at the hearing would be set out in a written order, took under advisement 3M's request for sanctions, and promised a new scheduling order. This order explains why the Court declined to grant the motion to compel in its entirety, grants 3M's request for sanctions under Rule 37(a)(5), and introduces a new pretrial schedule.

## I.      BACKGROUND

These six employment cases are about alleged discrimination at a 3M manufacturing plant in South Dakota. Mr. John Wingo[3] claims he was wrongfully terminated because of his race, disability, and in retaliation for reporting racial discrimination and harassment at the plant. (Am. Compl. ¶ 1, Dkt. No. 19 in 22-CV-993 (WMW/JFD)[4].) Plaintiffs in the other five cases claim that they were punished for supporting or associating with Mr. Wingo, and that they were victims of race, sex, or disability discrimination themselves.[5]

---

993 (WMW/JFD); Dkt. No. 89 in 22-CV-994 (WMW/JFD); Dkt. No. 89 in 22-CV-996 (WMW/JFD); Dkt. No. 104 in 22-CV-998 (WMW/JFD); Dkt. No. 78 in 22-CV-1890 (WMW/JFD) and Dkt. No. 74 in 22-CV-1904 (WMW/JFD).)

[3] There are two Plaintiffs with the last name "Wingo," distinguished, in this Order, by the use of their first names.

[4] Unless otherwise noted, docket references are for documents filed in 22-CV-998 (WMW/JFD).

[5] The Court mistakenly omitted a summary of Ms. Randle's allegations in its previous order granting Plaintiff's former counsel's motion to withdraw. (Sealed Order 4–5, Dkt. No. 92.) Ms. Randle alleges that 3M employees and supervisors harassed her and discriminated

(Am. Compl. ¶ 1, Dkt. No. 17 in 22-CV-994 (WMW/JFD); Am. Compl. ¶¶ 1, 8–10, 23, 26–29, Dkt. No. 16 in 22-CV-996 (WMW/JFD); Am. Compl. ¶¶ 1, 10–15, 18–22, 28–30, 33, 36–37, 41–42, Dkt. No. 18 in 22-CV-998 (WMW/JFD); Compl. ¶¶ 1, 6, 11, 13, 20, 23–24, 28, 29, Dkt. No. 1 in 22-CV-1890 (WMW/JFD); Am. Compl. ¶¶ 1, 8–15, 20, 23–24, 27–29, 34, 37, Dkt. No. 4 in 22-CV-1904 (WMW/JFD).)

### A.    Initial Discovery Issues

Discovery began in August 2022. (Pretrial Scheduling Order 1, Dkt. No. 32.) Because the six cases are related, the parties are conducting discovery for all six cases together; discovery produced in one case may be used in the other five cases. (3d Am. Pretrial Scheduling Order 2, Dkt. No. 44.) Plaintiffs sat for their depositions in March 2023, 3M reserved a date for their oral argument for summary judgment, and discovery closed on June 30. (*Id.*; Decl. of Joseph G. Schmitt ¶ 9, Dkt. No. 64; Order 2, Dkt. No. 56.) When discovery closed, counsel for 3M sent a deficiency letter to Plaintiffs' counsel, requesting supplemental responses in ten distinct areas, reprinted below as Appendix A. (Schmitt Decl., Ex. G.) Plaintiff's counsel agreed that they would make most of their supplementations by July 25. (Schmitt Decl., Ex. I.)

When July 25 arrived, Plaintiff's counsel sent a letter to 3M's counsel updating them on the status of discovery in the ten areas. (Schmitt Decl., Ex. J.) Counsel agreed that all ten areas were relevant and proportional but cautioned that it was difficult to provide an

---

against her because of her race and sex, but also because Mr. John Wingo identified her as someone who witnessed the harassing and discriminatory behavior of which he complained. (Am. Compl. ¶¶ 1, 8–15, 20, 23–24, 27–29, 34, 37, Dkt. No. 4 in 22-CV-1904 (WMW/JFD).)

estimate as to when the supplementations would be complete. (Schmitt Decl., Exs. I, J.) The productions were never completed. (Schmitt Decl. ¶ 17.)

**B.    Mr. Wingo's Supplemental Disclosure**

On August 26, 2023, counsel for Mr. Wingo sent a communication to counsel for 3M. In a stipulation, the parties characterized this communication as stating that Plaintiffs "would be providing a late discovery supplementation of hundreds of pages of text messages, and potentially other documents including photos or videos, after recently receiving a forensic phone image from Plaintiff's former counsel." (Joint Stipulation to Am. Scheduling Order ¶ 3, Dkt. No. 42.) According to an email from Plaintiff's counsel at McCollum Crowley—one of the three law firms Plaintiffs have employed at various times in this case—the image of the phone was taken on or about August 10, 2021 by the first firm to handle these cases. (Schmitt Decl., Exs. N, M.). When counsel at McCollum Crowley took representation over from the previous two firms, it reached out to the first firm directly to get its files on the case, rather than relying solely on the files transferred to it by the second firm. (Schmitt Decl., Ex. N.) The first law firm disclosed the phone data to McCollum Crowley. (*Id.*) After decrypting it, counsel reviewed the files, realized that they contained a complete image of Mr. Wingo's phone, and notified counsel for 3M that their supplementations as to Mr. Wingo would be "substantially larger" than previously expected. (*Id.*) Counsel for Mr. Wingo explained the timing this way:

> John Wingo was not aware of which files were downloaded from his phone. His phone was taken from him by an associate of [Mr. Wingo's first lawyer] while he conversed with [the lawyer]. John Wingo did not know that the files downloaded by [the] associate were different than those he produced in discovery in this matter. The disparity was recognized when we were able to

decrypt the data sent to us by [Mr. Wingo's first lawyer], and learned that the download was a full download of all data.

(Schmitt Decl. Ex. M.) This development was a surprise to 3M, because Mr. Wingo had testified at his deposition that McCollum Crowley was already in possession of the data from his old phone. (Schmitt Decl., Ex. T.)

In a letter to Plaintiffs' counsel, counsel for 3M questioned why the data from John Wingo's phone—totaling 791 pages of text messages, 135 images, and 107 videos—had not been produced to 3M in initial disclosures (or in response to earlier discovery requests) and highlighted four issues the disclosures raised. (Schmitt Decl. ¶ 19; Schmitt Decl., Ex. Q.) First, that data showed that Mr. Wingo exchanged responsive text messages with four other Plaintiffs, but those Plaintiffs never produced such messages from their phones, suggesting that they and Mr. Wingo still had discoverable information in their possession (*Id.*) Second, the privilege log associated with the supplemental disclosure gave insufficient detail about the basis for the privilege or work product doctrine claims, making it impossible for 3M to evaluate whether those claims were made in good faith. (*Id.*) Third, counsel for 3M argued that the newly disclosed information suggested that Plaintiffs had not shared the full scope of their communications with third parties using their website (3Mdiscrimination.com), social media, and the press (*Id.*; *see also* Schmitt Decl., Ex. P (raising concerns about information available online that was responsive to 3M's discovery requests, but that had not been produced).) The productions also called into question whether Ms. Holler was ever romantically involved with Mr. Wingo, leading 3M to suspect Mr. Wingo was the father of Ms. Holler's youngest child. (Schmitt Decl., Ex. Q.) Fourth

6

and finally, counsel for 3M claimed that they were entitled to re-open depositions to discuss the supplemental production with Plaintiffs and notice depositions to newly discovered third-party witnesses. (*Id.*) Plaintiffs' counsel responded to this letter by email and agreed to meet and confer on these issues. (Schmitt Decl. Ex. R.)

### C.   Ms. Randle's Supplemental Disclosure

On September 14, Plaintiffs made yet another substantial production, this time of text messages from Plaintiff Nevely Randle. (Def.'s Mem. Supp. 11.) The day before producing the messages, counsel for Plaintiffs explained the timing:

> [O]ur investigations into the texts found on John Wingo's phone have resulted in the discovery of texts on an old phone of Nevely Randle's. These texts will be in a supplemental production to you tomorrow morning. Ms. Randle explained that she found her old cell phone buried in her apartment. She explains that she was required by her cell-phone carrier to switch phones in early 2022 because the carrier was no longer supporting 3G phones. She was able to find the phone, which still had her text messages.

(Schmitt Decl., Ex. M.) This explanation confused counsel for 3M, because Ms. Randle stated under oath at her deposition that she did not have her old phone, "[e]verything was transferred to the new" phone, and she had given all the messages in her new phone to her lawyer. (Schmitt Decl. Ex. KK.) If the complete contents of Ms. Randle's old phone had been transferred to Ms. Randle's new phone, why, wondered 3M's counsel,  did her old phone have messages on it that were not on her new phone? In reviewing the new data from Ms. Randle's old phone, counsel for 3M discovered messages between Ms. Randle and Mr. Wingo that Mr. Wingo never disclosed, even in his recent production. (Def.'s Mem. Supp. 12–13.) Ms. Randle's production also contained messages between her and Ms. Holler, which Ms. Holler had never disclosed. (*Id.* at 13.)

Aside from the questions that the Wingo and Randle supplemental productions raised about the thoroughness of Plaintiff's discovery responses, the substance of the productions themselves was concerning. They showed that Mr. Wingo anticipated being fired from his job months before he was fired and that he was preparing a "statement" for a lawyer (Schmitt Decl., Ex. W ), that he encouraged Plaintiffs in this case to join him in suing 3M (Schmitt Decl., Ex. LL ), and that he expected a large payout from the suit. (Schmitt Decl., Ex. X). Further, the productions directly conflict with Mr. Wingo's sworn testimony (*Compare* Schmitt Decl., Ex. T *with* Schmitt Decl. Ex. U *and* Ex. V.) They also contradict the testimony of Ms. Holler, Mr. Vaughn Wingo, Mr. Kargbo, and Mr. Reiger when they said they had not talked to the other Plaintiffs about the case (*Compare* Schmitt Decl., Exs. Y, Z, AA, *and* BB, (deposing Ms. Holler, Mr. Vaughn Wingo, Mr. Kargbo, and Mr. Reiger respectively,) *with* Schmitt Decl. Ex. DD (documenting text messages from Mr. John Wingo's phone with Ms. Holler, Mr. Vaughn Wingo, Mr. Kargbo, and Mr. Reiger withheld as "work product"), Schmitt Decl. Ex. LL (reproducing texts about filing a lawsuit between Mr. Wingo and Mr. Reiger and between Messrs. John and Vaughn Wingo), *and* Schmitt Decl. Ex. MM (reproducing similar texts between Mr. Wingo and Ms. Randle)).

**D.   The Motion to Compel**

3M filed a motion to compel, asking the Court to order the Plaintiffs to produce all the material it had requested to date, to allow continued depositions, to permit third party discovery, and to award the costs associated with Plaintiffs' late disclosures. (Def.'s Mem. Supp. 13.) Instead of responding to the motion, Plaintiff's counsel at McCollum Crowley asked to withdraw from the case. (Mot. to Withdraw as Attorney, Dkt. No. 72.) The Court

granted the motion after questioning counsel in a sealed hearing. (Hr'g Mins., Dkt. No. 90; Sealed Order, Dkt. No. 92.)

With the motion to withdraw addressed, the Court turned its attention back to the motion to compel. Plaintiff's response to that motion was due on October 31, 2023, but no Plaintiffs filed a response. (Sealed Order 16.) However, five of the six Plaintiffs filed requests to either stay the case or continue the hearing. (Motion to Stay, Dkt. No. 98 (requesting a stay on behalf of Mr. John Wingo, Mr. Vaughn Wingo, Ms. Holler, and Mr. Kargbo); Letter to Magistrate Judge by Nevely Randle, Dkt. No. 69 in 22-CV-1904 (WMW/JFD).) The Court denied these requests. (Sealed Order Denying Motion to Stay, Dkt. No. 107; Text-Only Order at Dkt. No. 73 in 22-CV-1904 (WMW/JFD).) One month after granting counsel's request to withdraw, the Court held a hearing on the motion to compel, as scheduled. (Sealed Order 16; Hr'g Mins., Dkt. No. 113.) None of the Plaintiffs appeared, and because they filed no response, the Court inferred that the motion was unopposed and granted it in a ruling from the bench, with one exception to be elaborated upon in a written order. (Hr'g Mins., Dkt. No. 113.) *See* D. Minn. LR 7.1(g)(6) (providing that if a party fails to timely file and serve a memorandum of law, a court may take "action that the court considers appropriate.") The Court also promised an updated scheduling order, based on the draft order counsel for 3M proposed after attempting, without success, to contact any of the Plaintiffs for their input. (*See* Def.'s Unopposed Mot. to Am. Third Am. Pretrial Scheduling Order, Dkt. No. 108.)[6]

---

[6] On November 16, two days after the Court announced its ruling on the Motion to Compel, the Court received a motion to reconsider signed by Mr. John Wingo, Mr. Vaughn Wingo,

## II.   LEGAL STANDARDS

Parties in civil cases can discover nonprivileged information "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The requesting party has the burden of showing the information's relevance. *Sherman v. Sheffield Fin., LLC*, 338 F.R.D. 247, 252 (D. Minn. Apr. 26, 2021) (citing *Hofer v. Mack Trucks, Inc.,* 981 F.2d 377, 380 (8th Cir. 1992)). Then, "the party resisting production bears the burden of establishing lack of relevancy or undue burden." *Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, No. 15-CV-3183 (ADM/LIB), 2016 WL 6997113, at *7 (D. Minn. Sept. 6, 2016) (quoting *Saint Paul Reinsurance Co. v. Com. Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa Nov. 22, 2000)). This is a broad disclosure standard but it is not boundless; parties can discover only that information which is "proportional to the needs of the case," considering "the importance of the issues," "the amount in controversy," "the parties' relative access to relevant information," their resources, how important the discovery is in resolving the issues, and "whether the burden or expense of the proposed discovery outweighs its likely

---

Ms. Holler, and Mr. Kargbo. (Moving Pls.' Mot. Reconsider 2, Dkt. No. 114.) The Moving Plaintiffs claimed that they did not have notice of the hearing on the Motion because they did not receive a copy of their case file from their attorneys until the very day of the hearing. (*Id.*) The Court denied the motion because it failed to demonstrate compelling circumstances warranting reconsideration and because it was not filed in compliance with this District's Local Rules. (Order Denying Motion to Reconsider 4–6, Dkt. No. 117.) Plaintiffs were provided notice of the hearing date on multiple occasions. (*See* Am. Notice of Hr'g on Mot., Dkt. No. 79 (sent to former counsel while still retained); Sealed Order 16, Dkt. No. 92 (mailed and emailed to Plaintiffs by former counsel); Sealed Order 4, Dkt. No. 107 (mailed to Plaintiffs by the Court).) Notably, Plaintiffs' former counsel mailed the Court's order granting withdrawal to the plaintiffs—which stated that the motion to compel would be heard on November 14, 2023—and Mr. John Wingo confirmed receipt of the mailing. (Affidavit of Brian J. Kluk at ¶ 4, Dkt. No. 97.)

benefit." Fed. R. Civ. P. 26(b)(1). When a requesting party believes its discovery requests are relevant and proportional, but a responding party has failed to provide the requested information, the requesting party may make a motion to compel the responding party's production. Fed. R. Civ. P. 37(a)(3), (5).

If a party prevails in their motion to compel, the court must award them expenses unless the moving party failed to meet and confer, the opposing party's conduct was "substantially justified," or it would be otherwise unjust to order expenses. Fed. R. Civ. P. 37(a)(5). If the Court grants the motion to compel in part, the Court may, "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C).

## III.   ANALYSIS

At the hearing, the Court granted in part 3M's unopposed motion, overruling the claims of work-product protection that Plaintiff's former counsel previously made. (*See* Def.'s Mem. Supp. 15–23.) It took under advisement 3M's request for information about Plaintiffs' communications with a witness in the case, Ms. Thompson, and 3M's request for sanctions. The Court denies the first request because it could compromise the Fifth Amendment rights of the Plaintiffs in this case but grants the second request because 3M succeeded on every other element of its Motion to Compel.

### A.   3M's Motion to Compel Is Denied Without Prejudice as It Relates to Communications with Ms. Thompson.

Amanda Thompson was employed with 3M from October 2016 to January 2021 and is a witness in this case. (Def.'s Mem. Supp. 18–19; Schmitt Decl. Exs. FF, GG.) Ms.

Thompson submitted a sworn declaration in support of the allegations Messrs. John and Vaughn Wingo were making against 3M on June 15, 2023. (Schmitt Decl. Ex. GG.) In that declaration, Ms. Thompson stated that, one night in 2020, she heard another employee brag about breaking into Mr. Wingo's home. (*Id.*) But in Mr. Wingo's complaint, he claims that the break-in occurred on April 17, 2021. (Am. Compl. ¶¶ 30–32.) Any bragging the employee may have done had to have occurred after the break-in. But because Ms. Thompson was no longer working at 3M in April 2021, 3M argues that she cannot have heard any statements about the break-in at all. (Def's Mem. Supp. 19.) According to 3M, the "only available explanation is someone on the Plaintiffs' side generated a declaration for Thompson in which she testified—under oath—to hearing alleged statements she never could have heard." (*Id.*) At her deposition, Ms. Thompson could not provide more details about the incident, but when defense counsel confronted her with the apparent contradiction, she denied being pressured into lying in her declaration. (Ex. FF.)

Plaintiff's former counsel and counsel for 3M previously agreed that 3M was entitled to "Plaintiffs' communications with Amanda Thompson, prior to her representation, about this lawsuit, her claims, and 3M Aberdeen." (Schmitt Decl. Ex. G. (requesting the communications); Schmitt Decl. Ex. I (agreeing that the communications are relevant).) 3M has not yet received the communications it seeks. At the hearing on the motion to compel, counsel for 3M reiterated his client's need for these communications to determine whether Plaintiffs suborned perjury. The Court took the request under advisement. (Hr'g Mins., Dkt. No. 113.)

The Court now denies the request. Perjury and suborning perjury are federal crimes. 18 U.S.C. § 1621; 18 U.S.C. § 1622. Whether there are any communications between Plaintiffs and Ms. Thompson is not known. Former Plaintiffs' counsel's statement that Defendants are entitled to those communications is nothing more than an acknowledgment that such communications would fall within a category of discoverable material. But by producing any such communications, Plaintiffs *would be* acknowledging that communications between Ms. Thompson and Plaintiffs on the subjects of "this lawsuit, her claims, and 3M Aberdeen" existed. In the context of a case in which allegations of perjury are now being made, that is sufficient to bring disclosure of these communications within the Fifth Amendment privilege. Doubt about whether records of the communications exist means production of such records is not a foregone conclusion, which distinguishes this case from *United States v. Teeple*, 286 F.3d 1047, 1049–50 (8th Cir. 2002) (explaining the "act of production doctrine" and holding that it does not apply if the existence of incriminating documents is "a foregone conclusion").

It may be objected that most of the cases construing the act of production doctrine concern compelled disclosure of documents to the government, not to a private party in a civil lawsuit. The Court acknowledges that there is no binding precedent extending the doctrine to the realm of private civil litigation. But there is also no case limiting the doctrine to demands for production made by the government, nor can the Court think of any good reason for such a limitation, particularly given that the proposition that the Fifth Amendment applies as fully to civil cases as it does to criminal cases is so well-settled that the Court does not hesitate to characterize it as black-letter law. *Lefkowitz v. Turley*, 414

U.S. 70, 77, (1973)) (recognizing that the Fifth Amendment applies equally in civil and criminal proceedings).

While Plaintiffs' former counsel did not raise a Fifth Amendment challenge to 3M's request for communications with Ms. Thompson, because disclosure of this information would acknowledge the existence of the information, and may therefore expose Plaintiffs or Ms. Thompson to potential criminal prosecution, the Court denies the motion to compel as to Plaintiff's communications with Ms. Thompson.

### B.    The Request for Sanctions is Granted.

When a motion to compel is granted in part and denied in part, the court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C); *Sultana v. Endeavor Air*, No. 21-CV-2364 (JRT/TNL), 2022 WL 17690151, at *8 (D. Minn. Dec. 15, 2022). The Court has granted this motion to compel in almost every regard because of what appears to this Court to be a comprehensive—if uncoordinated, considering it was the glaring inconsistency between the different productions by different plaintiffs that led to this Motion to Compel—effort to withhold information that 3M is entitled to receive under the Federal Rules of Civil Procedure. What happened here went beyond a failure to timely disclose information requested in discovery. Plaintiffs, in their depositions, appear to have misrepresented that all relevant evidence had been disclosed when it had not. When an image of Mr. Wingo's cell telephone was produced, Defendants saw messages in that image that were to or from Plaintiffs other than Mr. Wingo but which had not been produced by those other Plaintiffs, When Defendants obtained messages from Ms. Randle's phone, things  got worse, because Defendants saw

messages to or from Mr. Wingo that he had not produced, notwithstanding a claim that he had produced an image of his old cell phone and disclosed relevant information from his new phone. In addition, these communications call into serious question Plaintiffs' assertion that they had not spoken with each other about this case.

If the Defendants are correct in their description of Plaintiffs' behavior, then it is not excused even if Plaintiffs genuinely believe that they were the objects of outrageous acts of racial bigotry. Those who believe they have been wronged cannot subvert the legal system to which they have turned for redress. Plaintiffs must accordingly explain why they should not be required to compensate 3M for the cost of bringing this motion and for the costs of re-opening and completing fact discovery in these cases. *See Rico v. JBS USA, LLC*, No. 8:13-CV-58, 2014 WL 222830 at *1–2 (D. Neb. Jan. 21, 2014) (ordering plaintiff to show cause in similar circumstances where defendant filed motion to compel, counsel withdrew, and plaintiff, now pro se, did not respond to motion).

## IV.   CONCLUSION

Plaintiffs must comply with 3M's discovery requests—except as to Ms. Thompson—by the dates described below. Failure to comply with this Order **will** result in sanctions, specifically a recommendation that this case be dismissed **with prejudice**. Fed. R. Civ. P. 16(f) (allowing the courts to issue just orders and sanction a party that fails to obey a pretrial order); Fed. R. Civ. P. 37(b)(2)(A) (listing potential sanctions for failure to comply with a court order); Fed. R. Civ. P. 41(b) (allowing courts to dismiss cases when plaintiffs fail to prosecute their claims or comply with a court order).

Therefore, based on the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Compel[7] is **GRANTED IN PART AND DENIED IN PART** and Defendant's Motion to Amend the Scheduling Order[8] is **GRANTED** as modified below. Specifically,

1. The fact discovery period set forth in this Court's previous Scheduling Orders has closed.

2. Notwithstanding that, Plaintiffs shall produce the following materials, or take the following actions by January 5, 2024:

   a) All responsive documents withheld by Plaintiffs on the basis of work-product, including witness statements (and related communications) from friends, family, and Plaintiffs in the Related Cases occurring in June through August 2021;

   b) Plaintiffs' communications with third parties regarding the Related Cases, their claims, and 3M Aberdeen. This includes, but is not limited to:

   o   Any and all of Plaintiffs' communications with media outlets of any kind;

   o   Any and all communications to, from, or regarding the NAACP;

---

[7] (Dkt. No. 67 in 22-CV-993 (WMW/JFD); Dkt. No. 58 in 22-CV-994 (WMW/JFD); Dkt. No. 44 in 22-CV-996 (WMW/JFD); Dkt. No. 66 in 22-CV-998 (WMW/JFD); Dkt. No. 32 in 22-CV-1890 (WMW/JFD) and Dkt. No. 36 in 22-CV-1904 (WMW/JFD).)

[8] (Dkt. No. 108 in 22-CV-993 (WMW/JFD); Dkt. No. 89 in 22-CV-994 (WMW/JFD); Dkt. No. 89 in 22-CV-996 (WMW/JFD); Dkt. No. 104 in 22-CV-998 (WMW/JFD); Dkt. No. 78 in 22-CV-1890 (WMW/JFD) and Dkt. No. 74 in 22-CV-1904 (WMW/JFD).)

> o   Any and all communications and documents related to their website https://3mdiscrimination.com/ *and any other websites*;
>
> o   Any and all materials from Plaintiffs' social media accounts; and
>
> o   Any and all communications and documents to or from the email Wingovs3M@gmail.com;

c)   Texts and/or videos Bates labeled #JWV015 and #JWV022, or confirmation of production;

d)   Plaintiffs' updated employment information, including earning statements;

e)   Additional responsive mitigation documents;

f)   Mr. Vaughn Wingo's 2022 tax return;

g)   Plaintiffs' tax return documents in a consistent format, including Robert Rieger's tax transcripts;

h)   Recordings listed on the "Evidence" page of the "3M Discrimination" website titled "Don't Keep Talking About It";

i)   Create an image of all Plaintiffs' phones from January 2021 to the present and produce all responsive text messages, audio, and video files that have not already been produced, including but not limited to any communications between Plaintiffs and between Plaintiffs and any third parties;

j)   Confirm whether any video footage at, from, or otherwise depicting Mr. John Wingo's home from 2021 exists, and produce any that still exists;

k)   Confirm diligent searches have been conducted to look for any other relevant and responsive video footage;

> If no video footage of Mr. John Wingo's home exists, provide details regarding the footage that previously existed, the date on which that footage was destroyed, and why the footage was destroyed;

l)   Confirm diligent searches have been made to search for all other responsive discovery and confirm when all such productions have been completed; and

m)   Produce the birth certificate of Ms. Holler's youngest child.

3.   Following complete production of the above materials, Defendant may re-depose, or depose for the first time, the following individuals: Mr. John Wingo, Mr. Vaughn Wingo, Ms. Holler, Ms. Randle, Mr. Rieger, Mr. Kargbo, Ms. Felicia Wingo, Mr. Ernest Wingo, and Ms. Whitney Schaumburg. If the condition precedent to re-opening depositions (complete production of the materials required by this Order) does not occur, then re-opening depositions will be unnecessary, because the undersigned magistrate judge will recommend dismissal of this case with prejudice. Any depositions that are re-opened shall not be counted against the Defendant's limitation on the number of depositions as set forth by the Pretrial Order. All non-expert depositions arising from this Order must be completed by **February 15, 2024**. Non-dispositive motions and supporting documents which relate to the production of documents subject to the above shall be filed and served by **January 12, 2024**.

4.   On or before **January 31, 2024,** Defendant will submit an application for their fees and expenses in bringing this motion.

5.   On or before **February 16, 2024**, Plaintiffs will each file a letter showing cause as

to why they should not be compelled to compensate 3M for its costs in bringing this motion.

6. Non-dispositive motions and supporting documents which relate to the depositions subject to the above shall be filed and served by **March 5, 2024**.

## **DISPOSITIVE MOTIONS: GUIDELINES AND DEADLINES**

The moving party shall contact the Courtroom Deputy for the District Judge assigned to this case no later than March 27, 2024,[9] to schedule a hearing for a dispositive motion, if any. Counsel are reminded that at least two (2) to three (3) months' advance notice may be necessary to place a dispositive motion on the calendar. All dispositive motions and supporting papers (motion, notice of motion, memorandum of law, affidavits and exhibits and proposed order) shall be filed and served in compliance with the Electronic Case Filing Procedures for the District of Minnesota and in compliance with Local Rule 7.1; however, unless otherwise directed by the Court, the moving party's motion papers shall not be filed until forty-two (42) days prior to the scheduled hearing date and any reply memorandum shall be filed at least fourteen (14) days prior to the scheduled hearing date.

Parties are expected to be familiar with and adhere to the Federal Rules, the Local Rules, and any supplementation of those rules outlined in the relevant Practice

---

[9] This case is assigned to the Honorable Wilhelmina M. Wright for dispositive motions and trial. Judge Wright has publicly announced her decision to retire on February 15, 2024. This case has not yet been reassigned to a different district judge. When it is, the undersigned will issue an Order with more details about the dispositive motions practice of that particular judge.

Pointers and Preferences, available on the District of Minnesota website.

Notwithstanding the foregoing, no party shall bring a dispositive motion pursuant to Fed. R. Civ. P. 56 while formal discovery is ongoing without first obtaining permission from the undersigned magistrate judge. Permission shall be sought by electronically filing via CM/ECF a letter of no more than three (3) pages briefly setting forth the basis for the motion, whether discovery relating to the issue or issues to be addressed by the motion is complete, and why judicial efficiency would be served by allowing the motion to proceed at this time. The other party or parties may file brief letters in support of or in response to the request. Denial of a request for permission to file an interim dispositive motion shall not be taken as an indication of the Court's view about the merits of the proposed motion.

## **TRIAL**

This case shall be ready for a **jury** trial on **July 29, 2024**. The anticipated  length of trial is 7 days.

Dated: December 18, 2023

*s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge

## APPENDIX A

1.  Plaintiffs' communications with Amanda Thompson, prior to her representation, about this lawsuit, her claims, and 3M Aberdeen are responsive to Defendant's discovery requests and should be produced.
2.  Plaintiffs' communications with third parties regarding this lawsuit, their claims, and 3M Aberdeen are responsive to Defendant's discovery requests and should be produced.
3.  Plaintiffs' privilege logs produced on November 2, 2022 lists various statements by non-party witnesses. Regarding these statements, please provide any

20

additional information, including whether the statements are written or recorded, whether they are sworn or signed, whether they are authored by the witness or an attorney, and the subject matters addressed.

4.      Plaintiffs' updated medical and mental-health records of treatment, including medical and mental-health billing records.

5.      Plaintiffs' updated employment information, including earning statements.

6.      Plaintiffs' updated answers to Defendant's Interrogatory Request No. 11, regarding Plaintiffs' calculations and basis for damages as required under *Kutz v. NGI Capital, Inc.*, No. 22-CV-1623-NBE-EWC (D. Minn. June 2, 2023).

7.      Additional mitigation documents.

8.      Plaintiffs John Wingo's and Vaughn Wingo's 2022 tax return documents.

9.      Plaintiffs' tax return documents in a consistent format. We are agreeable to the proposal to receive Plaintiffs' tax transcripts.

> In particular, for Plaintiff Rieger, we only received the first page of his tax return. Please provide Rieger's tax transcripts. For Plaintiff Holler, we received tax documents with incorrect Bates labels. In addition to the incorrect Bates labels, we did not receive document Bates labeled DHCA-287. Please produce accurately labeled and complete tax documents for Plaintiff Holler.

10.    Supplemental information and documents obtained after responding to Defendant's discovery requests.